FARMERS BANK OF HICKORY v. GLADE T. BRADLEY, Appellant.

Court en Banc, October 8, 1926.

**1. GROWING CROPS: Foreclosure Sale of Deed of Trust: Constructive Severance: Chattel Mortgage.** The lien of a deed of trust extends to growing crops, and neither the owner of the land nor his grantee can free crops growing thereon from the lien of the deed of trust except by actual severance from the soil before possession taken or foreclosure had under the deed of trust. A chattel mortgage on the growing crops, made after the maturity of the note secured by the deed of trust, is not an actual severance, nor does it remove the lien of the deed of trust upon the growing or unsevered crop.

**2. ———: Constructive Severance: Chattel Mortgage.** There may be a severance in the ownership of lands and growing crops thereon by a chattel

mortgage on the crops, but such act of severance does not relieve either the land or the crop of the lien of a prior deed of trust.

3. ———: **Conveyance of Land: Possession before Foreclosure Sale.**  A conveyance of real estate, without reservation or exception, vests in the grantee title to the land and title to the crops growing thereon; and the purchaser at a foreclosure sale under a deed of trust, in which the crops were not reserved or excepted from the lien, takes title to the crops unsevered from the land, although the mortgagor in the deed of trust, after its maturity, may have executed a chattel mortgage on the crops, recorded it and placed the mortgagee in possession before the foreclosure sale.

4. ———: **Personal Property: Right of Tenant.**  The rule of law that annual crops are treated as personal property for the purpose of a sale of them separate and apart from the land does not affect the right to the crops of a purchaser of the lands at a foreclosure sale under a prior deed of trust. Nor is his right affected by the statute (Sec. 2234, R. S. 1919) protecting the rights of the tenant in unharvested crops at the time of the foreclosure of a deed of trust, where he was neither tenant nor landlord.

5. ———: **Severance: Security for Debt.**  A deed of trust is security for the payment of a debt, but while it remains unsatisfied the maker can do nothing on his own motion to impair the security, except he has a right to sever growing crops from the ground, or collect rents or profits, until possession taken or foreclosure had under the deed of trust, and then the unsevered crops pass to the mortgagee or purchaser as an incident to the foreclosure.

Corpus Juris-Cyc. References: **Deeds,** 18 C. J., Section 275, p. 296, n. 24 New.  **Mortgages,** 41 C. J., Section 8, p. 283, n. 45; Section 403, p. 484, n. 63, 66 New; Section 601, p. 624, n. 87; p. 625, n. 91; 27 Cyc. p. 1729, n. 89, 94, 95.

Transferred from Kansas City Court of Appeals.

Reversed.

*L. B. Main* for appellant.

*Scott J. Miller* for respondent.

ATWOOD, J.—This is an action in replevin.  Elva Brassfield and Zella Brassfield, his wife, were the owners of a farm in Grundy County, Missouri, upon which they gave a deed of trust duly acknowledged and recorded May 17, 1922, securing one note for the principal amount of $1,000 due May 1, 1923, and five other notes for $150 each. After defaulting in the payment of the $1,000 note, Elva Brassfield gave a chattel mortgage to respondent to secure a note for $1,214.95 with property described in said chattel mortgage as "75 acres of corn located on the farm where I reside, and other property," which was filed in the office of the Recorder of Deeds of Grundy County, July 14, 1923, and ten or twelve days thereafter he advised respondent's cashier that he had traded the farm off and was going to turn the corn over to him as security; that the corn was his and he should

see after it. According to the abstract of the record respondent's cashier "took possession" of the corn, but it does not appear when or how this was done. Thereafter, on August 31, 1923, the farm was sold under foreclosure of the deed of trust, and appellant herein became the purchaser and took possession thereof, together with said corn, none of which at that time had actually been severed from the ground, and respondent, on November 19, 1923, filed this action in replevin to recover the corn, with damages for its detention. The trial court at the close of all the evidence instructed the jury at plaintiff's request as follows:

"You are instructed under the pleadings and the evidence in this case to find for the plaintiff as to possession of the property and that the plaintiff was entitled to possession of the property at the commencement of this action, and you will find the value of the plaintiff's lien on the corn in such sum as you deem proper from the evidence, and also the plaintiff's damages as such sum as you deem proper from the evidence."

The jury thereupon found for plaintiff, fixing the damages for detention at $250.

Defendant perfected his appeal, and the Kansas City Court of Appeals reversed the judgment, but deeming its decision in conflict with the decision of the Springfield Court of Appeals in Farmers Bank of Mt. Vernon v. Parker, 215 Mo. App. 96, the case was transferred to this court.

The Kansas City Court of Appeals, considering only one assignment of error, held that the lien of the deed of trust was paramount to that of the chattel mortgage as to the growing corn crop not actually severed from the ground at the time of the foreclosure sale, and that the purchaser at the foreclosure sale took clear title thereto. The contrary doctrine was announced by the Springfield Court of Appeals in Farmers Bank of Mt. Vernon v. Parker, supra, although such announcement appears to have been unnecessary to a determination of the case, for the opinion recites that there was "an actual severance by cutting the wheat on June 20th, six days before the sale under the land mortgage." This opinion makes no assault upon the well-established rule that the lien of a deed of trust extends to the growing crop. In effect, it simply holds that the owner of the land while in possession and before foreclosure can mortgage the growing crop to a third party free and clear of the lien of the deed of trust, on the theory that this severance of ownership, called "constructive severance" in the opinion, is tantamount to an actual severance of the crop from the soil, which in this State has been heretofore considered as the only way the owner of the land could remove the growing crop from the lien of the deed of trust.

In disposing of this apparent conflict it is not necessary for us to discuss the reasons for the rule permitting the removal of the growing crop from the lien of the deed of trust by actual severance from the soil. Respondent in the instant case necessarily concedes the rule, and seeks to liken the act of severance of ownership to that of actual severance from the soil, and bring the former also within the rule. It is sufficient if we indicate some conclusive reasons, if any exist, why in this State the rule should not be extended or construed so that the mere act of severance of ownership would remove the growing crop from the lien of the deed of trust, and prevent title to the crop, unsevered from the ground at the time of the foreclosure sale, from passing to the purchaser thereat.

It is obvious that the grantee in the chattel mortgage has only such rights as were thereby transmitted to him, and the grantor could not transmit rights he did not have. We have uniformly held that neither the owner of the land nor his grantee could free the growing crop of the lien of the deed of trust except by an actual severance from the soil before possession taken or foreclosure had under the deed of trust. [Steele to use of Milroy v. Farber, 37 Mo. l. c. 80; Hayden v. Burkemper, 101 Mo. l. c. 647; Reed v. Swan, 133 Mo. 100; Jones on Mortgages, sec. 1658; 8 R. C. L. 362; 27 Cyc. 1144.] Certainly this chattel mortgage is in no better position than the owner was or an outright purchaser would have been. In so holding we fully recognize, and have heretofore held in Hayden v. Burkemper, 101 Mo. l. c. 648, that there may be a severance in the ownership of land and crops growing thereon, but such act of severance in and of itself does not relieve either property of the lien of a prior deed of trust. So much for the chattel mortgagee's claim that the growing corn crop was removed from the lien of the deed of trust by the land owner's execution and delivery of the chattel mortgage thereon.

Respondent's position, in the light of the unquestioned rights of the purchaser at the foreclosure sale, is likewise untenable. It has long been the unbroken rule in this State that a conveyance of real estate, without reservation or exception, vests title to the growing crops as well as the land in the purchaser. In the words of Judge BLACK, speaking for this court in Hayden v. Burkemper, 101 Mo. l. c. 647, "under such circumstances growing crops are accessories to the land." The rule of law that annual crops are treated as personal property for the purpose of a sale of them separate from the land does not affect this case. Had the parties to the deed of trust specially agreed therein as to the growing crops such agreement would doubtless have been binding upon the purchaser at the foreclosure sale, but no such agreement is pleaded or shown. The beneficiary under the deed of trust was not a party to or bound by the chattel mortgage, and the filing of the latter instrument no more bound the purchaser to permit the chattel mortgagee to enter upon the

premises after the sale and sever and remove this growing crop than would the filing of any other instrument executed by the owner of the land purporting to transmit a right which he did not have and could not himself exercise. The purchaser at the foreclosure sale got everything to which the lien of the deed of trust extended on that date, and this security could not have been and was not impaired by the *ex parte* act of the landowner in giving the chattel mortgage. "A sale by foreclosure is but a consummation of what was begun by the mortgage conveyance." [Johnson v. Cook, 96 Mo. App. 1. c. 447.] The owner of that land could mortgage or sell the unsevered growing crops separate from the land, thereby effecting a severance of ownership or "constructive severance," which would be good as between him and his grantee, but subject to the prior lien of the deed of trust and the usual incidents consequent upon its foreclosure. Such has been the policy of the law as declared by this court from the beginning, and, as modified by the act of March 30, 1893, now Section 2234, Revised Statutes 1919, protecting the rights of the tenant in unharvested crops on land at the time of its foreclosure, this is the well-established public policy of Missouri. As we said in Reed v. Swan, 133 Mo. 1. c. 107, it relates "to the ownership of real property and should not be disturbed save for the gravest reasons." The General Assembly might have further defined the rights of mortgagor and mortgagee, but we must take its failure so to do as expressive of the legislative will, and we are not free to override this prerogative by judicial legislation.

It is suggested in behalf of the respondent, and in Bank v. Parker, 215 Mo. App. 96, supra, that in this State a deed of trust is treated as a mere security for the payment of the debt and not as an outright conveyance of title. Even so, the above doctrine still prevails. While the debt remains unsatisfied the maker of the deed of trust can do nothing on his own motion to impair the security, except under the above conceded rule he has the right to sever growing crops from the ground, or collect rents and profits (which latter right cannot be invoked under the facts in this case), until possession taken or foreclosure under the deed of trust. This sound doctrine was early announced in Kennett v. Plummer, 28 Mo. 1. c. 145-6, thus: "The modern doctrine is well-established that a mortgage is but a security for the payment of the debt or the discharge of the engagement for which it was originally given, and until the mortgagee enters for breach of the condition, and in many respects until final foreclosure of the mortgage the mortgagor continues the owner of the estate, and has a right to lease, sell, and in every respect to deal with the mortgaged premises as owner, so long as he is permitted to remain in possession. [4 Kent. 157.] Of course he cannot impair the rights of the mortgagee, and every person taking under him will hold sub-

ject to the mortgage and to all the rights of the mortgagee.''
In Benton Land Co. v. Zeitler, 182 Mo. l. c. 273, the cases on this
point are thoroughly reviewed, the above doctrine upheld, and 2
Perry on Trusts (5 Ed.) section 602j, quoted with approval, as fol-
lows: ''In law, a mortgage is considered, as between the mortgagor
and mortgagee, and so far as it is necessary to give full effect to
the mortgage as a security for the performance of the condition, as
a conveyance in fee. But for all other purposes it is considered, es-
pecially until entry for condition broken, as a mere charge or encum-
brance, which does not divest the estate of the mortgagor. He is
deemed seized so far that he can convey it subject to the mortgage;
he may make a second mortgage; it may be attached for his debts;
he is considered as having all the rights and powers of an owner,
except so far as it is necessary to hold otherwise in order to give
effect to the mortgage. The interest of a mortgagor is therefore re-
garded as an estate; though, in legal strictness and as against the
mortgagee, it is an equity of redemption. It may be levied upon
and seizin delivered by the officer; in which case the creditor will
hold in fee subject to the mortgage. The same principles apply to
the rights and title of the grantor in deeds of trust.''

· It is urged that the rule should be changed in the interest of ag-
riculture. Ruling Case Law, vol. 8, pages 361-2, thus comments on
the rule as heretofore declared by this court: ''There is no hard-
ship in this rule, for if a mortgagor makes preparations for a crop,
he does it with a full knowledge that the land with the crop is sub-
ject to be sold, if the sale takes place before he severs it. Nor does
he lose anything by this, for the crop on the land enhances the price.
If by this increase the debt is overpaid, he gets the surplus; and if
there is no surplus, still the full value of his labor goes to the pay-
ment of the debt secured by the mortgage.'' However this argument
advanced in behalf of respondent may impress the General Assem-
bly, we do not think it should impel us to undertake judicial legisla-
tion.

The Springfield Court of Appeals' opinion in Bank v. Parker, 215
Mo. App. l. c. 99, quotes Jones on Chattel Mortgages (5 Ed.) sec-
·tion 130, page 188, as follows: ''Growing crops are so far a part
of the realty that upon the entry of a mortgagee of the land, all the
crops not severed pass under the mortgage. But a chattel mortgage
of the crops, made by the owner in possession, operates ·in law as a
severance of them, so that they will not pass under a mortgage of
the land upon the subsequent entry of the mortgagee and sale of
the realty under the mortgage.'' Among the cases cited as uphold-
ing this text are Willis v. Moore, 59 Tex. 628, and White v. Pulley,
27 Fed. 436; the latter case being decided according to the law of
Alabama where it arose. The ·former case primarily turns upon the

nature of a deed of trust as defined by the law of Texas, one distinguishing feature mentioned, and not recognized in Missouri, being that the mortgagee has "no right to the possession, nor to the fruits and revenues so long as the mortgage stands unforeclosed." But aside from matters peculiar to the jurisdiction in which this line of cases prevails, we are not impressed with the supporting reasons advanced, and decline to adopt them.

For the reasons above stated we sustain the decision of the Kansas City Court of Appeals reversing the judgment in the instant case, and disapprove the contrary doctrine announced by the Springfield Court of Appeals in Farmers Bank of Mt. Vernon v. Parker, 215 Mo. App. 96.

Judgment reversed. All concur, except *Graves, J.*, who is absent.